**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STARNET INSURANCE CO.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV01163 SNLJ** |
| | ) | |
| **CORPORATE CASH FLOW SOLUTIONS, ET. AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM</u>**

Plaintiff has filed this declaratory judgment action seeking the Court's determination that it has no duty to defend or indemnify certain parties, in several underlying state court actions, pursuant to the subject Workers Compensation and Employers Liability Insurance Policy (hereinafter referred to as simply the Policy).  This matter is before the Court on the plaintiff's motion for summary judgment [84], filed January 17, 2012.  Numerous responsive pleadings have now all been filed by all the parties involved, and the matter is ripe for disposition.

The appropriate standard for consideration of all motions for summary judgment is as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial.  On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party

> only if there is a genuine dispute as to those facts.  Credibility
> determinations, the weighing of the evidence, and the drawing of
> legitimate inferences from the facts are jury functions, not those of
> a judge.  The nonmovant must do more than simply show that there
> is some metaphysical doubt as to the material facts, and must come
> forward with specific facts showing that there is a genuine issue for
> trial.  Where the record taken as a whole could not lead a rational
> trier of fact to find for the nonmoving party, there is no genuine
> issue for trial.

Torgerson v. City of Rochester, 643 F.3d. 1081, 1085 (8th Cir. 2011)( internal citations and

quotations omitted); *see also*, Jackson v. United Parcel Service, Inc., 643 F.3d. 1031, 1042 (8th

Cir. 2011)(*citing* Torgerson*, supra.*).  Since the interpretation and construction of insurance

policies is a matter of law, the issue of whether the duty to defend or indemnify exists under a

policy are particularly amenable to summary judgment.  Newyear v. Church Ins. Co., 155 F.3d.

1041,1043 (8th Cir. 1998); Reliance Ins. Co. v. Shenandoah South, Inc., 81 F.3d. 789, 791 (8th

Cir. 1996); Atlantic Casualty Ins. Co. v. River Hills Antique Tractor Club, Inc., 2012 WL 40467,

*2 (E.D.Mo. Jan. 9, 2012)(*citing* Newyear, *supra.*).

The material facts in this case are largely undisputed.  In 2009, plaintiff StarNet issued a

Workers Compensation and Employers Liability Insurance Policy (Policy) to defendant

Corporate Cash Flow Solutions (CFS).  The Policy includes coverage for workers compensation

claims (Part One) and employers liability claims (Part Two).  The Policy effective coverage

period was July 31, 2009 through July 31, 2010.  The Policy identifies CFS as the sole Named

Insured.  During the relevant time-period, defendant Jack Eigles was the President and Treasurer

of CFS.

Beginning in late 2009, several lawsuits were filed in the Circuit Court of St. Louis

County, Missouri against CFS, Jack Eigles and Adrienne Eigles (wife of Jack Eigles).[1]  The State Lawsuits consist of eleven (11) lawsuits including thirteen (13) female plaintiffs.  The plaintiffs in the State Lawsuits each allege that they were secretly videotaped by Jack Eigles while using the bathroom at CFS' office, a bathroom in Jack Eigles' home during a social event, or the bathroom in Jack Eigles' cabin on a cruise ship.  *See*, State Court Petitions attached to Plaintiff Starnet's Statement of Uncontroverted Material Facts [86], Exhibits B through O.  The State Lawsuit plaintiffs are all named defendants in the instant declaratory judgment action.[2]

On December 21, 2009, a public grand jury indictment was filed against defendant Jack Eigles arising out of the videotaping incidents.  On April 30, 2012 defendant Jack Eigles plead guilty to three (3) counts of Second Degree Invasion of Privacy of Multiple Individuals, a Class D Felony.

Defendants CFS, Jack Eigles, and Adrienne Eigles have all made a demand under the Policy for defense and indemnity for the State Lawsuits.  The legal issue before this Court is whether the Policy excludes coverage for the injuries alleged in the underlying State Lawsuits.  StarNet contends that it owes no duty to defend or indemnify under Part One of the Policy as none of the lawsuits seek workers compensation benefits.  StarNet further contends that it owes no duty to defend or indemnify Jack Eigles or Adrienne Eigles as neither is a Name Insured

---

[1]For purposes of the instant declaratory judgment action and the summary judgment motion, the underlying state court actions are collectively referred to as the "State Lawsuits".

[2]These women are referred to collectively as "State Lawsuit Plaintiffs", "Underlying Plaintiffs", and/or "Defendants".  For purposes of clarity and judicial efficiency, the Court will simply referred to these women as "Individual Defendant _____" in this memorandum. The Individual Defendants are named as: Stacy Lampe, Debra Kennamann, F.D. Armer, Ria Schumacher (they filed jointly), Jane Doe I, Jane Doe II, Jane Doe III, Jane Doe IV, Jane Doe V, Jane Doe VI, Jane Doe VII, Jane Doe VIII, and Cheryl Baumann.

under the Policy.  StarNet further contends it owes no duty to defend or indemnify under Part

Two of the Policy as 1) the coverage is limited to "bodily injury" to CFS' employees and several

of Individual Defendants are not employees of CFS; 2) several of the State Lawsuits arise out of

conduct which occurred outside of the Policy coverage period; 3) the State Lawsuits do not allege

"bodily injury" claims; and 4) the State Lawsuits are excluded under the "Humiliation

Exclusion."  Only the following parties have responded to the instant motion: defendant CFS [97

and 98]; Individual Defendant Jane Doe VII [94 and 95]; and Individual Defendants Kennamann,

Armer, and Schumacher (jointly) [101 and 102].

　　　Before addressing the matter at hand, it is apparent that several counts as contained in

StarNet's Complaint for Declaratory Relief [1] can be summarily dismissed.  Defendant CFS

concedes, and no defendant contends otherwise, that the subject Policy does not provide

coverage for any incidents in the State Lawsuits alleged to have occurred outside the coverage

period of July 31, 2009 through July 31, 2010 and/or for claims asserted in the State Lawsuits by

women who were not employees of CFS during the Policy coverage period.  Thus, summary

judgment will be granted as to Counts III (Jane Doe I), V (Jane Doe III), VI (Jane Doe IV), VII

(Jane Doe V), VIII (Jane Doe VI), X (Jane Doe VIII), and XI (Baumann).

　　　Although no party addresses Count IV involving Individual Defendant Jane Doe II, the

Court finds that summary judgment shall be granted to StarNet as to Count IV.  Jane Doe II

alleges in her State Lawsuit that she was an employee of CFS; however, she further alleges that

she was videotaped between September 2007 and September 2008.[3]  Since the alleged

---

[3]It appears to the Court that in StarNet's Memorandum in Support of Summary Judgment
[85], counsel confused the Individual Defendants.  On page 6, subsection D, counsel states "The
Jane Doe III Lawsuit (corresponding to Count V of the Complaint) alleges she was secretly

videotaping incidents took place outside the Policy coverage period, StarNet is entitled to summary judgment on Count IV of its Complaint.

This leaves the following Counts viable in this litigation: Count I (Lampe), Count II (Kinnamann, Armer, and Schumacher), and Count IX (Jane Doe VII).

Finally, StarNet contends that the only Named Insured under the Policy is defendant CFS and that if any duty to defend or indemnify as to the State Lawsuits arises, it is solely as to defendant CFS' defense.  No party, including defendants Jack Eigles and/or Adrienne Eigles, disputes this material fact or presents any legal argument in rebuttal. Since this material fact is not in dispute, the Court finds that StarNet has no legal duty to defend or indemnify defendants Jack Eigles and/or Adrienne Eigles in the State Lawsuits as a matter of law.  *See*, Lindsay v. Safeco Ins. Co. of America, 447 F.3d. 615, 618 (8th Cir. 2006); Missouri Employers Mutual Ins. Co. v. Nichols, 149 S.W.3d. 617, 624 (Mo.App.2004).

The parties agree that Missouri law applies in this diversity case.  Under Missouri law, the interpretation of an insurance contract and whether coverage and exclusion provisions are ambiguous are questions of law.  Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d. 539, 542 (8th Cir. 2012); Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d. 857, 861 (8th Cir. 2012); Schmitz v. Great American Assurance Co., 337 S.W.3d. 700, 705 (Mo. 2011); Burns v. Smith, 303 S.W.3d. 505, 509 (Mo. 2010).  As a federal court sitting in diversity applying state law, this Court first seeks Missouri Supreme Court precedent to address the issues at hand; however,

---

videotaped from September 2007 to September 2008 (SUF 27)."  In fact, Jane Doe II alleges that she was videotaped from September 2007 to September 2008 (Count IV of StarNet's Complaint [1]); whereas, Jane Doe III alleges she was videotaped on December 22, 2007 (Count V of StarNet's Complaint [1]).

where no Missouri Supreme Court precedent exists, a federal court must predict what the court would decide and consider decisions from the intermediate state courts when they are the best evidence of Missouri law.  Interstate Bakeries Corp., at 542; Secura Ins., at 861.  In pursuing its search as to how Missouri courts address or would address a particular issue, a federal court may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data.  Raines v. Safeco Ins. Co. of America, 637 F.3d. 872, 875 (8th Cir. 2010)(citations omitted); see also, The Doe Run Resources Corp. v. Lexington Ins. Co., 2012 WL 1389789, *6 (E.D.Mo. April 23, 2012)(citation omitted).

Under Missouri law, insurance policies are contracts and the rules of contract construction apply.  Sargent Construction Co. v. State Auto Ins. Co., 23 F.3d. 1324, 1326 (8th Cir. 1994); Todd v. Missouri United Sch. Ins. Co., 223 S.W.3d. 156, 160 (Mo. 2007).  The "cardinal rule of contract interpretation" is to ascertain the intent of the contracting parties and give effect to that intention.  Interstate Bakeries Corp., at 543; Secura Ins., at 861.  This most often accomplished by giving the words in the policy their ordinary or plain meaning.  Interstate Bakeries Corp., at 543; Secura Ins., at 861; Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d. 505, 508 (Mo. 1997).  The plain or ordinary meaning is the meaning that an average layperson would give the term.  Schmitz, at 705-06; Burns v. Smith, at 511; Farmland Indus., at 508; Tamko Building Products v. Factual Mutual Ins. Co., 2012 WL 3596155, *2 (E.D.Mo. August 21, 2012)(citing Farmland Indus., supra.); Dallas v. American General Life and Accident Ins. Co., 2012 WL 368716, *2 (E.D.Mo. Feb. 3, 2012)(citing Farmland Indus., supra.); Clarinet , LLC v. Essex Ins. Co., 2012 WL 182529, *5 (E.D.Mo. Jan.23, 2012).  A policy's provisions should be read in the context of the policy as a whole.  Interstate Bakeries Corp., at 543; Secura

-6-

Ins., at 861; The Doe Run Resources Corp., at *7; Atlantic Casualty Ins. Co., at *3.  Finally, in interpreting an insurance policy, a court must endeavor to give each provision a reasonable meaning to avoid an interpretation which renders some provisions useless or redundant.  Dibben v. Shelter Ins. Co., 261 S.W.3d. 553, 556 (Mo.App. 2008); Tamko Building Products, at *2 (*citing* Dibben, *supra.*).

When the language of an insurance policy is clear and unequivocal, then the parties are bound by its clear meaning.  Courts are not permitted to create ambiguities where none exists or to distort the contractual language so as to rewrite a policy in order to provide coverage which the parties had not intended, absent a statute or public policy requiring coverage.  Lindsay, at 617; American Family Mut. Ins. Co. v. Van Gerpen, 151 F.3d. 886, 888 (8th Cir. 1998); Hawkeye-Security Ins. Co. v. Bunch, 2009 WL 5176781, *7 (E.D.Mo. Dec. 22, 2009).  Ambiguities in an insurance contract must be construed against the insurer and in favor of the insured.  Murray v. American Family Ins. Co., 429 F.3d. 757, 764 (8th Cir. 2005); Todd, at 160.

An ambiguity exists in an insurance contract when there is duplicity, indistinctness, or uncertainty in the meaning of the language used in the policy.  Burns v. Smith, at 509; Seeck v. Geico Gen. Ins. Co., 212 S.W.3d. 129, 132 (Mo. 2007); Dibben, at 556; Tamko Building Products, at *2.  Furthermore, Missouri law provides that an ambiguity exists in an insurance policy if it is fairly susceptible to multiple constructions.  Burns v. Smith, at 509; Seeck, at 212; Dibben, at 556; Mendenhall v. Property and Casualty Ins. Co. of Hartford, 2012 WL 3106613, *2 (E.D.Mo. July 31, 2012).  Mere disagreement by the parties regarding a contract term's interpretation does not render said term ambiguous.  Lindsay, at 617; Lang v. Nationwide Mutual Ins., 970 S.W.2d. 828, 830 (Mo.App. 1998); Hawkeye-Security Ins. Co., at *7.

As previously stated, when interpreting insurance policy language, a court must give the language its ordinary meaning unless it is plainly appears that a technical meaning was intended. American Family Mutual Ins., at 888; Farmland Indus., at 508; Mendenhall, at *2 (*citing* Farmland Indus, *supra.*).  Furthermore, a term is not ambiguous merely because it is not defined in the policy. American Family Mutual Ins. Co. v. Peck, 169 S.W.3d. 563, 567 (Mo.App. 2005). A court is free to consult a dictionary in order to give the term a reasonable construction, including but not limited to standard English language dictionaries and Black's Law Dictionary. Shahan v. Shahan, 988 S.W.2d. 529, 535 (Mo. 1999); Dibben, at 557 (*citing* Missouri Employers Mutual Ins. Co. v. Nichols, at 625); Atlantic Casualty Ins. Co., at *5.

Under Missouri law, exclusionary clauses are strictly construed against the insurer; and although the insured bears the burden of proving coverage, the insurer bears the burden of establishing the applicability of an exclusion. Interstate Bakeries Corp., at 543 (*citing* Truck Ins. Exchg. v. Prairie Framing, LLC, 162 S.W.3d. 64, 80 (Mo.App. 2005)); Burns v. Smith, at 510; Tamko Building Products, at *5; The Doe Run Resources Corp, at *7; Clarinet v. Essex Ins. Co., at *5.

The duty to defend is determined by comparing the insurance contract's language with the allegations of the underlying complaint.  Interstate Bakeries Corp., at 542 (*citing* McCormack Baron Mgmt Services, Inc. v. American Guarantee and Liability Ins. Co., 989 S.W.2d. 168, 170 (Mo. 1999)); Secura Ins., at 861 (*citing* McCormack Baron Mgmt Services, *supra.*); The Doe Run Resources Corp., at *7.  "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend."  Interstate Bakeries Corp., at 542 *quoting* McCormack Baron, at 170-71.  Thus, a duty to defend arises whenever

there is a potential or possible liability to pay based upon the facts alleged at the outset of the underlying case.  Secura Ins., at 861.  The duty to defend is broader than the duty to indemnify, and the insurer must show no possibility of coverage in order to avoid a duty to defend. Interstate Bakeries Corp., at 543; The Doe Run Resources Corp., at *7.  In addition to the allegations present in the underlying case, the insurer should consider whether other facts it knew or could have learned from a reasonable investigation at the time the lawsuit was filed, establish potential coverage.  Interstate Bakeries Corp., at 542 (citing Trainwreck West, Inc. v. Burlington Ins. Co., 235 S.W.3d 33, 42 (Mo.App. 2007)); Secura Ins., at 861 (citing Trainwreck West, supra.).  However, in determining whether a duty to defend exists, a court is barred from reading into the underlying complaint any factual assumptions.  Interstate Bakeries Corp., at 542-43 (citing Penn-Star Ins. Co. v. Griffey, 306 S.W.3d 591, 599 (Mo.App. 2010).  Finally, "[T]he presence of some insured claims in the underlying suit gives rise to a duty to defend, even though uninsured claims or claims beyond coverage may also be present."  Interstate Bakeries Corp., at 543 quoting Lampert v. State Farm Fire & Cas. Co., 85 S.W.3d 90, 93 (Mo.App. 2002); Truck Ins. Exchg., at 79.

### Part One - Workers Compensation

Plaintiff Starnet contends that Part One of the subject Policy does not cover any of the remaining State Lawsuits because the Individual Defendants in those lawsuits do not seek benefits under Missouri's worker compensation law.  StarNet contends that it does not have a duty to defend or indemnify CFS, under Part One of the Policy, from tort claims by its employees which occurred during their employment and while on the job. The parties agree that Missouri courts have yet to address the issue of whether an insurer has a duty to defend or indemnify an

insured from such tort claims pursuant to a workers' compensation policy. However, defendant CFS and Individual Defendant Jane Doe VII contend that the tort claims are covered by Part One of the Policy pursuant to <u>Quick v. Roland Adams Construction, Inc.</u>, 861 So.2d. 278, 280 (La.Ct.App. 2003).[4] StarNet, on the other hand, contends that the case <u>Carolina Casualty Ins. Co. v. Pinnacol Assurance</u>, 425 F.3d. 921, 928 (10th Cir. 2005) is applicable and holds that a workers' compensation insurer does not owe a duty to defend in a state court tort suit.

Part One of the Policy provides Workers Compensation Insurance.  Under Part One of the Policy, StarNet agrees to pay "the benefits required of you by the workers compensation law" and agrees to defend "any claim, proceeding or suit against you for benefits payable by this insurance."   Plaintiff's Statement of Uncontroverted Material Facts [86], Exhibit 86-1 (A). Thus, Part One of the Policy provides for coverage, pursuant to §287.120 *et. seq.* R.S.Mo. (2012)(Missouri Workers Compensation Law), for physical and certain mental and emotional injuries suffered by employees during the course of their employment.

In <u>Quick v. Ronald Adams Contractor, Inc.</u>, *supra.*, Eagle Pacific Ins. Co. issued both a workers compensation liability policy and an employers liability policy to Presco Amphibious Equipment, Inc.  While the policies were in effect, an employee of Presco (Steven Quick) sustained serious injuries while working in the course and scope of his employment.  Quick claimed and was awarded workers' compensation benefits under Presco's workers compensation liability policy.  However, he then filed a tort suit action against Presco alleging tort liability based on negligence. The trial court found that Eagle did not owe Presco the duty to defend the

---

[4]Individual Defendants Kennamann, Armer, and Schumacher concede that Part 1 of the Policy does not provide coverage, and therefore, a duty to defend based upon Part 1 of the Policy does not exist.

Quick tort suit.  The Louisiana appellate court reversed, holding that Eagle had a duty to defend Presco against Quick's tort suit, and that this duty arose out of the workers compensation policy itself.  Quick, at 280-81.[5]

  The Louisiana appellate court cited policy language stating:

> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.
>
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Quick, at 281-82.  The Court found this language "sufficiently broad enough to encompass a duty to defend Presco against this suit. This is a 'suit' by Quick against Presco ('you'), alleging the facts of an injury and damages to Quick that are covered by workers compensation insurance." Quick, at 282.  Based upon past Louisiana state court precedent and the fact that Quick's complaint asserted allegations of negligence, the Quick Court found that the underlying suit came within the insurer's duty to defend under the workers compensation policy.  Quick, at 282.

  On the other hand, in Carolina Casualty Ins. Co. v. Pinnacol Assurance, *supra.*, the Tenth Circuit Court of Appeals held that no duty to defend or indemnify the insured in a state court tort action by an injured employee existed.  The Carolina Casualty Court reviewed the same policy language as cited in Quick, *supra.* and the same language contained in the subject Policy.  The Court reviewed Colorado's workers compensation system finding that "[o]rdinarily a worker has no right to sue his employer in tort.  If the worker is an 'employee' and is injured while

---

[5]The Louisiana appellate court first agreed with the trial court that coverage was not afforded under the employers liability insurance policy because of a "workers compensation exclusion" in that policy.  Quick, at 281.

-11-

'performing service arising out of and in the course of the employee's employment', he or she is

entitled to benefits under the workers' compensation system." Carolina Casualty, at 924.  The

Court further noted that when an insurer provides a duty to defend/indemnify coverage, the

insurer has no duty to defend a claim against the insured absent a possibility that the claim will

result in a judgment for which the insurer has a duty to indemnify.  Carolina Casualty, at 928.

The injured employee argued that his claim was covered by Colorado's workers compensation

act; therefore, the insurer had a duty to defend under the workers compensation policy. Id., at

929.

    The Carolina Casualty Court disagreed based upon the "exclusivity" provision of

Colorado's workers compensation law.

> Colorado, as is typical among the states, provides a
> specialized administrative system for the resolution of
> workers' compensation claims.  Judicial review of final
> orders of the administrative-hearing division is available
> only in the Colorado Court of Appeals.
>
> For a trial court to award workers' compensation benefits
> would be to violate the administrative system's exclusive
> jurisdiction to decide workers' compensation claims.
>
> Simply put, there was no possibility that the state court could
> impose on RMJOB **[the insured]** a judgment for workers'
> compensation benefits, which is what Pinnacol provided
> indemnity coverage for.  Evidence at the state-court trial
> establishing all the elements necessary for a proper workers'
> compensation claim could not have entitled Mr. Dymowski
> to workers' compensation benefits.  Those benefits can be
> awarded only by the administrative tribunal with exclusive
> jurisdiction over such claims.

Carolina Casualty, at 929.  The Court further noted that "[a] compelling majority of the courts to

consider the issue agree that a workers' compensation insurer does not owe a duty to defend in a

state-court tort suit despite an allegation that the suit should have been brought as a workers' compensation claim." Id., at 929.

      Missouri has a similar workers' compensation system as the one reviewed by the Carolina Casualty Court.  Missouri's Workers' Compensation Law (hereinafter referred to as the "Act") provides that an employer will be liable to furnish compensation for "personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person." §287.120.1 R.S.Mo.  The Act further sets forth an "exclusivity provision" which provides: "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter." §287.120.(2) R.S.Mo.  The Labor and Industrial Relations Committee has exclusive jurisdiction over all workers' compensation claims and whether any particular claim falls within the jurisdiction of the Act.  Giandinoto v. Chemir Analytical Services, Inc., 545 F.Supp.2d. 952, 960 (E.D.Mo. 2007)(citations omitted).  "Where the Court's 'jurisdiction is in doubt, it should be resolved in favor of the [Labor and Industrial Relations Committee].'"  Giandinoto, at 260 (citation omitted).

      Missouri courts have consistently held that the Act's exclusivity provision is a complete bar to common law tort actions that arise out of work-related incidents and fall within the Act's provisions.  Giandinoto, at 260; Brooks v. Kelly, 2011 WL 6088573, *2 (E.D.Mo. Dec. 7, 2011)(citations omitted); Sykora v. Marshall & Ilsley Corp., 2011 WL 7109328, *3 (E.D.Mo. March 24, 2011)(citations omitted); Rundel v. Bob Evans Restaurant, Inc., 2010 WL 597366, *2

-13-

(E.D.Mo. Feb. 17, 2010). This bar extends to claims of intentional tort of emotional distress arising during the course of the plaintiff's employment. Giandinoto, at 260; Brooks v Kelly, at *2; Sykora v. Marshal & Ilsey Corp., at *3.

Since Missouri's Workers' Compensation Law provides benefits for claims of physical injuries, as well as certain mental and emotional injuries, the Individual Defendants' claims are preempted by the Act, and there is no possibility that a trial court could impose on defendant CFS a judgment for workers' compensation benefits. Even if the claims present in the State Lawsuits could have been brought as workers' compensation claims instead of independent tort claims as CFS argues, it is not up to this Court to "convert" the claims in order to circumvent the exclusivity provision of the Act.

Thus, StarNet has no duty to defend or indemnify CFS in the underlying State Lawsuits under Part One of the Policy.

### Part Two - "Bodily Injury"

Plaintiff StarNet contends that it has no duty to defend or indemnify under Part Two of the Policy because coverage is limited to claims seeking damages for "bodily injuries" which does not include emotional and/or mental injuries (as sought by the remaining Individual Defendants). StarNet argues that Missouri law has historically found that "bodily injury" requires a physical injury.

CFS and Individual Defendants Kennamann, Armer, and Schumacher (hereinafter referred to collectively as the "Individual Defendant Kennamann") argue that the Missouri Supreme Court case of Derousse v. State Farm Mutual Automobile Insurance Co., 298 S.W.3d. 891 (Mo. 2009) held that insurance coverage for "bodily injury" is not limited to physical injury,

-14-

but may also encompass emotional and/or mental injury.[6]

Part Two of the Policy provides Employers Liability Insurance coverage.  The Employers

Liability states, in pertinent part:

> A. **How This Insurance Applies**
>
> This employers liability insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.
>
> 1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.
> . . . . . .
>
> 3.  Bodily injury by accident must occur during the policy period.

Plaintiff's Exh. A to [86].

The Policy does not specifically define "bodily injury."

StarNet's duty of indemnification for the Employers Liability Insurance is limited to the

Named Insured (CFS) and states in pertinent part:

> B. **We Will Pay**
>
> We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

Plaintiff's Exh. A to [86].

StarNet's duty to defend for the Employers Liability Insurance is limited to the Named

Insured (CFS) and states in pertinent part:

> D. **We Will Defend**

---

[6]Individual Defendant Jane Doe VII does not address, in any manner, the issue of coverage of "bodily injury" under Part Two including coverage for emotional and/or mental injuries.

-15-

> We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.
> . . . . . . .
>
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Plaintiff's Exh. A to [86].

Missouri courts have addressed the issue of the meaning of the term "bodily injury" over the past twenty-five (25) years and have held consistently that the term "bodily injury" requires some physical harm to the person, and generally does not encompass emotional and/or mental injuries.  In Ward v. American Family Insurance Co., 783 S.W.2d. 921 (Mo.App. 1989), the policy at issue defined "bodily injury" as "bodily injury to or sickness, disease or death of any person."  Ward, at 923.  The appellate court concluded that "[S]o defined, we understand the clause to require some physical harm to the person claiming a bodily injury."  Id., at 923.

Next, in Fildes v. State Farm Mut. Auto. Ins. Co., 873 S.W.2d. 883 (Mo.App. 1994), the policy at issue defined "bodily injury" as "bodily injury to a person or sickness, disease or death which results from it."   Fildes, at 886. Citing Ward, supra., the Fildes Court also found that the term "bodily injury" requires some physical harm to the person claiming a bodily injury.  Fildes, at 886.  The appellate court held that only the husband plaintiff suffered physical harm in the subject car accident; whereas, his wife (Cleta Fildes) "did not suffer physical harm and thus, had no 'bodily injury'."  Fildes, at 886.

 In Lanigan v. Snowden, 938 S.W.2d. 330 (Mo.App. 1997), the appellate court again addressed the issue of whether the term "bodily injury" could encompass emotional and/or mental injuries. In Lanigan, supra., the plaintiff's sister had died in a hotel, and by the time the

plaintiff had been notified, her body had already been disposed of by the hotel owners.  The

plaintiff sought emotional distress damages for interference with his right of sepulcher.  The

policy at issue defined "bodily injury" as "bodily injury, sickness or disease sustained by a person

including death resulting from any of these at any time."   Lanigan, at 332.  The appellate court

held that the policy's definition of "bodily injury" was ambiguous because it was uncertain

whether "sickness" and "disease" were modified by "bodily,"  i.e., if "bodily" modified only

injury, then "sickness" or "disease" may include damages for mental harm.  Id., at 332.  The

Lanigan Court briefly reviewed Ward, *supra.* and Fildes, *supra.* but concluded that their holding

were "merely *dicta*", preferring instead to rely upon a New York state court case, Lavanant v.

General Accident Ins. Co. of America, 79 N.Y.2d. 623 (1992) for supporting its holding.  Id., at

332-33.

       In Citizens Ins. Co. of America v. Leindecker, 962 S.W.2d. 446 (Mo.App. 1998), the

Missouri appellate court addressed the meaning of "bodily injury" in the context of a

homeowners liability insurance policy.  The policy at issue defined "bodily injury" as "bodily

harm, sickness, or disease, including required care, loss of services and death that results."

Leindecker, at 451.  The insurer argued that the term "bodily injury" was ambiguous and

included emotional distress.  The Leindecker Court reviewed both the Ward and Fildes cases

noting that these cases found that the term "bodily injury" was limited to physical harm and did

not include a claim based upon a non-physical harm such as loss of consortium. The Court also

reviewed the Lanigan, *supra.* and Lavanant, *supra.* cases and found them to be "in the minority."

Id., at 452. The Court viewed the Ward and Fildes decisions to be part of the "overwhelming

majority of jurisdictions which have considered the issue hold that 'bodily injury' standing alone

or defined in a policy as 'bodily injury [or harm], sickness or disease' is unambiguous and encompasses only physical harm." Id., at 452 (citations omitted).

Finally, the Leindecker Court looked at dictionary definitions to assist in defining the term "bodily injury." It found that pursuant to general English language dictionaries, "bodily" is equated with "physical" as opposed to "mental" or "spiritual." Id., at 453. It further found that Black's Law Dictionary similarly defined "bodily" as pertaining to the "body" or "physical constitution" and not "mental;" and the term "bodily injury" as generally referring to injury to the body. Id., at 453. Finally, the Leindecker Court compared the term "bodily injury" with "personal injury" as commonly used in insurance law, and noted that in insurance law "'bodily injury' is considered to be a narrower concept than 'personal injury' which covers mental or emotional injury." Id., at 453. The Leindecker Court concluded that "the common meaning of the phrase 'bodily harm, sickness, or disease' as used to define 'bodily injury' is not ambiguous and that it refers to physical conditions of the body and excludes mental suffering or emotional distress . . . We adopt the majority view, which is consistent with our position in *Fildes* and *Ward*." Leindecker, at 454.

In 2009, the Missouri Supreme Court addressed the meaning of the term "bodily injury" in the context of an uninsured motorist claim. Derousse v. State Farm Mut.Auto. Ins. Co., 298 S.W.3d. 891 (Mo. 2009). In Derousse, a woman witnessed an automobile accident that she alleged caused her significant emotional distress, but no physical harm. She sought coverage for her emotional distress damages by making an uninsured motorist claim under her insurance policy. The policy provided uninsured motorist coverage for "damages for bodily injury" and defined "bodily injury" as "bodily injury to a person and sickness, disease or death which results

from it."  Derousse, at 893.  The Court found that the insurance policy language was deficient under Missouri law, particularly Missouri's Uninsured Motorist Statute, § 379.203.1 R.S.Mo.  It found that the policy's language was narrower than Missouri's Uninsured Motorist Statute coverage language; therefore, the broader language of § 379.203.1 controlled.  Id., at 894.  It reformed the policy language to conform to § 379.203.1; then used methods of statutory construction to determine that the Missouri legislature intended the relevant provision of the Missouri Uninsured Motorist Statute to include coverage for both bodily and mental injuries, sicknesses, and diseases.  Id., at 894-95.  The Court specifically found that in § 379.203.1, the term "bodily" modifies only "injury" and not the phrase "sickness or disease, including death."  Id., at 895.  The Court then looked at dictionary definitions of "bodily injury," "sickness" and "disease" and concluded that the plaintiff's damages were compensable under the "sickness" or "disease" categories provided by § 379.203.1.  Since the Missouri Uninsured Motorist Statute prevailed over the policy language, it did not matter whether the plaintiff's emotional distress claims met the definition of "bodily injury" as submitted by the insurer (i.e., not including emotional or mental injuries) because her claims were covered by § 379.203.1 R.S.Mo.

In Cairo Marine Service, Inc. v. Homeland Insurance Co. of New York, 2011 WL 1770949 (E.D.Mo. May 10, 2011), the District Court addressed the issue of whether an exclusion in a policy "for bodily injury, sickness, disease or death" included a claim for emotional injuries. The District Court found that "[U]nder prevailing Missouri law, the man's claim for emotional injuries does not fall with the meaning of 'bodily injury, sickness, disease or death.'"  Cairo Marine, at *5.  The Court found that the policy at issue did not define any of the terms and that the insurer had failed to show that its exclusion provision applied to the injured man's separate

-19-

claim for his emotional injuries from coverage.  Id., at *5.  The District Court distinguished the Derousse case on the basis of it being limited to a matter of statutory construction defining a the term "bodily injury" and that the phrase in Derousse was broader than the phrase in the Cairo Marine policy.  Id., at *5-*6.  The District Court found that since the phrase in the policy before it was narrower than the phrase in the Derousse case, "the context of the exclusion indicates that the parties intended to limit the exclusion to physical injuries and ailments."  Id., at *6.  Thus, a duty to defend in the underlying lawsuit existed because the exclusion clause did include emotional injuries.

Upon careful review of the Derousse case, this Court concurs with the review and analysis as set forth in Cairo Marine, supra.  The Missouri Supreme Court clearly found that a statutory mandate (§379.203.1 R.S.Mo.) required broader coverage of "bodily injury, sickness or disease, including death" than what might be interpreted from the policy language.  Based upon this statutory mandate, the Court held that coverage had to be expanded to include emotional distress caused by the negligence of an uninsured motorist, even without bodily harm to the plaintiff.  The essence of the Court's holding was that an injury such as emotional distress came within the purview of "sickness or disease."

Contrary to the defendants' contentions, Derousse does not stand for the wholesale proposition that the term "bodily injury" includes emotional or mental injuries.  The Missouri Supreme Court interpreted a specific statute to ascertain the Missouri legislature's intent in order to determine whether the phrase "bodily injury, sickness or disease, including death" covered emotional injuries.  This is not the case before this Court.  There is no Missouri statute implicated in the instant case, nor is there any need to ascertain legislative intent in order to

-20-

conform the StarNet policy language to such a statute.  The Policy at issue does not define the term "bodily injury" nor does it include the term in a sequence with the terms "sickness" or "disease."  There is no expansion of the term "bodily injury" as was evident in <u>Derousse</u>.  There is nothing in the Policy's language which remotely indicates that the word "bodily" modifies the words "sickness" or "disease."

Dictionary definitions for "bodily," "injury," "mental," and "emotional" demonstrate that the term "bodily injury" as commonly understood does not include emotional and/or mental injuries.  Webster defines "bodily" as "having a body" with synonyms of "physical" or "corporeal."  It defines "injury" as "hurt, damage, or loss sustained;" "mental" as "of or relating to the mind" and "of or relating to the total emotional and intellectual response of an individual to external reality;" and "emotional" as "markedly aroused or agitated in feeling or sensibilities." **Merriam-Webster's New Collegiate Dictionary,** Eleventh Ed. (2003).

Similarly, Black's Law Dictionary defines "bodily injury" as "physical damage to a person's body;" and "serious bodily injury" as "serious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ." **Black's Law Dictionary**, (9th ed. 2009).

Given the history of Missouri law on this issue, and in light of the common law meanings associated with the term "bodily injury," this Court concludes that the language of Part Two is unambiguous and that the term "bodily injury" pertains solely to a physical harm to the human body.

Two other arguments are advanced by the defendants.  Firstly, they argue that Part One

covers only physical injuries, and if Part Two covers only physical injuries, then Part Two is redundant of Part One.  The Court disagrees.  As already noted, Missouri's workers compensation law covers both physical and emotional injuries occurring within the course of employment.  *See*, Kampouris v. Saint Louis Symphony Society, 52 F.Supp.2d. 1096, 1107 (E.D.Mo. 1999), *aff'd* 210 F.3d. 845 (8th Cir. 2000); Nichols v. American National Ins. Co., 945 F.Supp. 1242, 1247 (E.D.Mo. 1996); Waldemeyer v ITT Consumer Financial Corp., 767 F.Supp. 989, 993 (E.D.Mo. 1991); Sewell v. Vatterott Educational Centers, Inc., 2011 WL 2838112, *3 (E.D.Mo. July 18, 2011); Hollins v. Luxco, Inc., 2008 WL 4204819, *1 (E.D.Mo. Sept. 5, 2008); Cotton v. A.T & T Operations, Inc., 2006 WL 3617896, *3 (E.D.Mo. Nov. 21, 2006). Furthermore, Missouri's workers compensation law provides exclusive jurisdiction of the Labor and Industrial Relations Commission over all employment-related injuries, including those where the conduct alleged is intentional.  *See*, Sewell, at *3; Hollins, at *1.

Secondly, defendants contend that even if Part Two does not apply to emotional or mental injuries, the Individual Defendant Kennamann have alleged that they sustained physical injuries as a result of the videotaping.

In the Kennamann lawsuit, the Individual Defendant Kennamann seek damages for the following injuries: embarrassment, humiliation, **sleeplessness**, mental anguish and **stress**, **physical harmful symptoms**, and **pain and suffering**.  Plaintiff's Exhibit D to [86].  Individual Defendant Kennamann concede that none of them had any physical contact with Jack Eigles. They simply contend that"sleeplessness,"  "stress," "physical harmful symptoms," and "pain and suffering" are "allegations of bodily injury using a plain definition of this phrase."  Individual Defendants Kennamann, Armer, and Schumacher Opposition Memorandum [102], pg. 7.  They

-22-

fail to identify this "plain definition" or cite a resource or caselaw which supports this proposition.

In <u>Heacker v. Safeco Ins. Co. of America</u>, 676 F.3d. 724 (8th Cir. 2012), *aff'g* 2011 WL 124301 (W.D.Mo. Jan 14, 2011), the Eighth Circuit agreed with the district court's finding that physical manifestations of emotional distress does not constitute "bodily injury."  <u>Id.</u>, at 728.  In <u>Heacker</u>, a plaintiff sought recovery for PTSD, embarrassment, anxiety, sleeplessness, paranoia, and alcoholism under various insurance policies.  The insurers all denied coverage for various reasons, including that the policies only provided coverage for "bodily injuries" which they contended did not include emotional injuries.  The plaintiff contended that his damages did come within the purview of "bodily harm" because his emotional distress were accompanied by physical symptoms.  The district court applied Kansas law to interpret the policies and concluded that even if the policies did not specifically define "bodily injury" so as to exclude coverage for any and all emotion type injuries including those manifesting physical symptoms despite no physical bodily contact, the district court would still find such coverage did not exist.

> Second, even if the Am. Fam. Policy did not more specifically refine the definition of 'bodily injury', relying instead on the simply 'bodily harm, sickness or disease' definition, there is no justification for interpreting the term in a manner that excludes coverage for 'purely emotional distress' but provides coverage when emotional distress is accompanied by physical manifestations.  Such an interpretation is illogical, and the Court has no reason to believe the courts of Kansas would adhere to such an interpretation.  Physical manifestations of emotional distress or other related emotional harm may offer insight into the severity or extent of the emotional trauma suffered, but, absent some physical, bodily harm, such physical manifestations arise out of and are directly caused by purely emotional injury, which is clearly excluded from coverage.

<u>Heacker</u>, 2011 WL 124301, *8, *aff'd* 676 F.3d. at 728.  The district court applied this holding to

the other policies (Nationwide and an Umbrella policies) reiterating that "no coverage exists for emotion harm absent some actual bodily harm to Plaintiff regardless of whether the emotion harm is so severe as to manifest physical symptoms.".  Heacker, 2011 WL 124301, *9.  The Eighth Circuit agreed noting that Kansas was one of several jurisdictions wherein "bodily injury" does not include emotional distress and citing Leindecker, *supra.*

This Court agrees with the analysis and reasoning in Heacker, and believes that Missouri courts will continue to separate physical injuries from mental and/or emotional injuries based upon the logic that a "bodily injury" requires some type of physical contact; and that absent some actual bodily harm, physical manifestations arising out of and directly attributable to an emotional injury/trauma do not qualify as "bodily injuries."

Thus, Part Two of the Policy does not give rise to a duty to defend or indemnify under the "bodily injury" requirement.

## Part Two - Humiliation Exclusion

The parties also debate the application of what they term an "humiliation exclusion," one of several exclusions set out in Part Two of the policy after the coverage provisions.  That provision states:

**C.  Exclusions**

This insurance does not cover:
 . . . . . . .

7. damages arising out of coercion, criticism, demotion,
   evaluation, reassignment, discipline, defamation,
   harassment, humiliation, discrimination against or
   termination of any employee, or any personnel practices,
   policies, acts or omissions;

-24-

Having determined, however, that there is no coverage in the first place for bodily injury, the application of any exclusions to that coverage is altogether irrelevant.  If there is no coverage, in other words, then there is nothing to which an exclusion could apply.  Accordingly, there is no need to address the humiliation exclusion debate  --  there is no coverage, and that is the end of it. *See*, e.g., <u>Cincinnati Insurance Company v. Venetian Terrazzo, Inc.</u>, 198 F.Supp.2d 1074, 1079 (E.D. Mo.  2011); <u>Hawkeye-Security Insurance Company v. Davis</u>, 6 S.W.3d 419, 427 (Mo. App. 1999).

      Dated this 27th day of September, 2012.


                        _____
                        STEPHEN N. LIMBAUGH, JR.
                        UNITED STATES DISTRICT JUDGE